UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/13/09
```

------------------------------------------x
                                 :

ACE CHROME CORP.,              :

                               :

                Plaintiff,    :        08 Civ. 10401 (TPG)

                               :

        – against –       :        **OPINION**

                               :

IBEX CONSTRUCTION, LLC, et al.,  :

                               :

              Defendants.  :

                               :

------------------------------------------x

      Plaintiff Ace Chrome Corp. brings this diversity action against OTG Management, Inc. and OTG Management JFK, LLC (collectively "OTG") and against IBEX Construction, LLC to recover payments for over $1 million of millwork and metalwork that Ace performed in connection with the construction of a food court at JFK International Airport.  OTG and IBEX have filed separate motions to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

      The motions are denied.

### Facts

      The following facts are taken from the complaint, as well as the contracts referenced in the complaint.  For purposes of this motion, the facts alleged in the complaint are assumed to be true.

      Ace is an Illinois corporation with its principal place of business in Chicago.  OTG Management, Inc. is a Pennsylvania corporation with

an office in New York and is the owner of the property for which Ace was hired to perform certain work.  OTG Management JFK, LLC is a New York company with its principal place of business in Pennsylvania. IBEX, a New York company, was OTG's contractor and hired Ace as a subcontractor.

The relationship between OTG and IBEX is governed by a contract known as the "prime contract."  In general, the prime contract requires IBEX to oversee the construction work, and to hire subcontractors to carry out the work.  These activities are done under OTG's oversight.  The contract requires OTG's approval for IBEX to hire subcontractors.  Furthermore, IBEX may only pay subcontractors for their work "upon receipt of payment from OTG," which OTG must make once certain conditions are met.

The prime contract also states that it "shall not be construed to create a contractual relationship of any kind" between OTG and subcontractors.  It further states that, except as "expressly set forth" in the contract, the prime contract "is for the sole benefit of [OTG and IBEX]" and shall not be "construed to provide any third persons . . . with any rights (including, but not limited to, any third-party beneficiary rights)" under the contract.  However, the contract also states that contracts between IBEX and subcontractors shall "allow to the Subcontractor the benefit of all rights, remedies and redress afforded to the Contractor by the" prime contract.

The relationship between Ace and IBEX is governed by a separate contract, which was entered into on July 17, 2008. That contract provides that Ace will "furnish, deliver and install all Millwork/ Casework/Metalwork work for the Jet Blue Terminal 5 Food Court located at JFK International Airport" for a price of $1.65 million. The contract between Ace and IBEX specifies that payment for the work is contingent upon, among other things, "receipt of funds by IBEX Construction from [OTG] designated for payment to" Ace. The contract further states that Ace "acknowledges it is relying solely on the credit of [OTG] and not on the credit of [IBEX]."

Ace substantially complied with its agreement with IBEX. In particular, it manufactured and delivered most of the products ordered by IBEX, and therefore invoiced IBEX for approximately $1.02 million. Defendants did not reject or otherwise object to Ace's work, and they never disputed the invoices. Nonetheless, defendants have refused to pay Ace.

Ace asserts three causes of action against defendants—breach of contract, unjust enrichment, and payment of an account stated—and seeks damages of $1,022,112.66, as well as interest and costs.

IBEX and OTG both move to dismiss the complaint on the ground that because Ace conducts business in New York without being registered to do so, it is precluded by New York law from bringing a civil action in New York courts. OTG also moves to dismiss the complaint on

the grounds that (1) OTG has no obligation to Ace under the contract between IBEX and Ace; (2) Ace cannot assert a claim of unjust enrichment because a written contract governs this dispute; and (3) Ace cannot assert an account stated claim because OTG had no contractual obligation to Ace.

## **Discussion**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In deciding such a motion, a court must accept as true the facts alleged in the complaint, and may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the lawsuit. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### Doing Business in New York

Under § 1312 of New York's Business Corporation Law, a "foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state." Ace concedes that it does not have "authority" to do business in New York for purposes of this statute.

The critical question is therefore whether Ace is "doing business" in New York.  For Ace to be found to be doing business in New York, its activity here must be "permanent, continuous, and regular."  Neth. Shipmortgage Corp. v. Madias, 717 F.2d 731, 736 (2d Cir. 1983).  If, on the other hand, Ace only occasionally conducted activities in New York, it is not barred by § 1312 from bringing a lawsuit.  Highfill, Inc. v. Bruce & Iris, Inc., 50 A.D.3d. 742, 743-44 (2d Dep't 2008).

Defendants contend that the following factors weigh in favor of finding that Ace is "doing business" in New York.  First, defendants assert that Ace employees worked at the construction site "on a regular and systematic basis," and that Ace executives visited the site "on a systematic basis" to supervise the work.  Second, in June 2008, Ace also performed work for IBEX at another site in New York City.  Third, furniture purportedly manufactured by Ace can be purchased in Rome, New York from an independent retailer.  Fourth, Ace characterizes itself as a "national" company.

These assertions do not constitute sufficient evidence that plaintiff is doing business in New York.  Defendants have offered no actual evidence to support their claims.  On the other hand, Ace has offered a seemingly credible affidavit by its president that contradicts defendants' claims.  That affidavit establishes that Ace manufactures its products primarily in Illinois.  In the project at issue in this litigation, as well as the other project referred to by defendants, Ace manufactured its

products in Illinois and then shipped the products to New York. Contrary to defendants' contentions, Ace does not employ workers in New York to install its products; rather, it hires an independent contractor in New York to do so. Furthermore, Ace executives did not visit the New York construction sites on a "systematic" basis. Rather, their visits were relatively infrequent and for brief durations. Finally, even if defendants are correct that Ace's products can be purchased from a solitary third-party retailer in New York and that Ace markets itself as a "national" company, that does not establish that Ace is doing business in New York.

The evidence establishes that Ace's activities in New York are not continuous and regular. Rather, Ace conducts business in New York only occasionally. Ace is therefore not "doing business" in New York for the purpose of § 1312, and is not barred from instituting this litigation.

Third-Party Beneficiary Claim

OTG argues that Ace cannot assert standing as a third-party beneficiary of the prime contract.

For a plaintiff to assert a valid third-party beneficiary claim under New York law, it must establish that (1) a valid and binding contract existed, (2) the contract was intended for the plaintiff's benefit, and (3) the benefit to the plaintiff is immediate (rather than incidental), indicating that the contracting parties intended to compensate the plaintiff. Mendel v. Henry Phipps Plaza W., Inc., 6 N.Y.3d 783, 786

(2006). In evaluating the parties' intent to benefit a third party, courts should look to whether performance of the contract will satisfy the promisee's obligation to the third party; whether the promisee intended to give the third party the benefit of the promised performance; and whether the contracting parties manifested their intent in such a way that the third party was likely to reasonably rely on the contract. Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 44-45 (1985).

Plaintiff has satisfied these tests for establishing that it is a third-party beneficiary of the prime contract. There is no dispute that the prime contract between IBEX and OTG is a valid and binding contract. Furthermore, as illustrated by the following factors, the contract indicates that it was intended for the immediate benefit of Ace and other subcontractors. The contract gives OTG exclusive control of the hiring of Ace and of all payments to Ace. For OTG to fulfill its obligations to IBEX, OTG must provide IBEX with the funds that are then used to compensate Ace. For that reason, the contract between IBEX and Ace explicitly states that payment to Ace is contingent upon OTG paying IBEX, and that Ace is relying on OTG's credit, not IBEX's credit. When IBEX and OTG entered into this contract and provided a copy of it to Ace, and when IBEX entered into a contract with Ace that specifically referenced the obligations imposed by the prime contract, Ace and OTG

manifested an intent to benefit Ace in a way that allowed Ace to reasonably rely on the terms of the prime contract.

OTG does not meaningfully address the tests established by the Court of Appeals, but instead argues that the contract's language rejecting the creation of third-party beneficiary rights is dispositive. As OTG notes, the Appellate Division has given considerable weight to contractual provisions that state that a contract is not intended to benefit third parties, in one case finding that such provisions are "controlling" and "effectively negate" a third-party claim. IMS Eng'rs-Architects, P.C. v. State, 51 A.D.3d 1355, 1357 (3d Dep't 2008). However, there is no basis in the opinions of the Court of Appeals for giving such a clause dispositive weight. Although the prime contract's third-party beneficiary clause provides some evidence of the parties' intent, it is outweighed by the evidence discussed above. Moreover, that clause itself states that it does not apply to the extent set forth in the contract, and another clause of the contract states that subcontractors are to be given "the benefit of all rights, remedies and redress afforded to" IBEX. Moreover, recognizing Ace's claim does not negate the third-party beneficiary language relied on by OTG. That language still provides OTG with a valid defense against claims by third parties that are unable to make a showing that they were intended as beneficiaries of the contract.

OTG's Remaining Arguments

OTG also seeks to dismiss Ace's claims for unjust enrichment and payment of an account stated. OTG's arguments are without merit.

To state a claim against OTG for unjust enrichment, Ace must allege that OTG was enriched, at Ace's expense, under circumstances such that equity requires OTG to make restitution. Louros v. Cyr, 175 F. Supp. 2d 497, 514 n.8 (S.D.N.Y. 2001). Ace has made precisely these allegations. OTG correctly argues that the existence of a valid written contract ordinarily precludes recovery under an unjust enrichment theory for matters covered by the written contract. Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987). Nonetheless, the litigation has not yet reached the stage where it would be appropriate to deny Ace the opportunity to pursue its unjust enrichment claim as an alternative to its breach-of-contract claim.

New York law recognizes a cause of action based on an "account stated" where a plaintiff has billed a defendant and the defendant has failed to object to the bill within a reasonable time. Gurney, Becker & Bourne Inc. v. Benderson Dev. Co., 47 N.Y.2d 995, 996 (1979). Under such circumstances, the defendant is deemed to have conceded that the bill is accurate. Id. The complaint appears to allege that plaintiff billed OTG. Rather than disputing this contention, OTG argues that this claim should be dismissed as a matter of law. This argument is based on the same contractual language that, according to OTG, states that OTG has

no obligations to any subcontractor.  As previously discussed, however,

Ace has adequately alleged that OTG had contractual obligations to Ace

and other subcontractors.  There is therefore no basis for dismissing the

account stated claim.

## **Conclusion**

The motions to dismiss are denied.

SO ORDERED.

Dated:  New York, New York
August _13_, 2009

Thomas P. Griesa
U.S.D.J.